**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION**

IN RE:

**EDDY AND PAMELA SIZEMORE**                                            **CASE NO. 09-61064**

**DEBTORS**


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Debtor's Motion for Leave to Pay Off Plan in Advance [Doc. 94][1] and the Trustee's Objection to the Debtor's Amendment to Schedule C – Property Claimed as Exempt [Doc. 96].[2]

The central issue is the attempt by the Debtor, Pamela Sizemore ("Pamela"), to exempt the full value of $100,000.00 in life insurance proceeds (the "Proceeds") received post-confirmation upon the death of her co-Debtor and ex-husband, Eddy Sizemore ("Eddy"). These matters were set for evidentiary hearing [Doc. 108], which was continued on the request of the parties [Docs. 122 and 130]. The Order continuing the hearing provided that: "The issue of

---

[1] Related papers include: (1) the Trustee Objection to Debtor's Motion to Pay Off Plan in Advance [Doc. 98]; (2) Affidavit in Support of Motion to Pay Off Plan Early and in Opposition to Trustee's Objections to Amended Schedule C [Doc. 101 & 102]; (3) Memorandum of Law in Support of Debtor's Amended Schedule C and in Opposition to Trustee's Objection [Doc. 103]; (4) Joint Stipulations [Doc. 112]; (5) Evidentiary Hearing Affidavit of Debtor, Pamela D. Sizemore [Doc. 113]; (6) Evidentiary Hearing Brief (of Debtor) [Doc. 115]; (7) Debtor's Exhibits [Doc. 117]; (8) Trustee's Memorandum Supporting Trustee Objection to Debtors' Exemptions w/ Trustee's Exhibits [Doc. 118]; (9) Amended Exhibit List (of Debtor) [Doc. 119]; (10) Notice of Supplemental Exhibits (of Trustee) [Doc. 120]; and (11) Second Amended Exhibit List (of Debtor) [Doc. 129].

[2] Related papers include: (1) Amendment to Schedule C – Property Claimed as Exempt [Doc. 95];(2) Amendment to Schedule C – Property Claimed as Exempt , which is treated as a supplement to the initial amendment at Doc. 95 [Doc. 100]; (3) Affidavit in Support of Motion to Pay Off Plan Early and in Opposition to Trustee's Objections to Amended Schedule C [Doc. 101 & 102]; (4) Memorandum of Law in Support of Debtor's Amended Schedule C and in Opposition to Trustee's Objection [Doc. 103]; (5) Joint Stipulations [Doc. 112]; (6) Evidentiary Hearing Affidavit of Debtor, Pamela D. Sizemore [Doc. 113]; (7) Evidentiary Hearing Brief (of Debtor) [Doc. 115]; (8) Debtor's Exhibits [Doc. 117]; (9) Trustee's Memorandum Supporting Trustee Objection to Debtors' Exemptions w/ Trustee's Exhibits [Doc. 118]; (10) Amended Exhibit List (of Debtor) [Doc. 119]; (11) Notice of Supplemental Exhibits (of Trustee) [Doc. 120]; and  (12) Second Amended Exhibit List (of Debtor) [Doc. 129].

whether the life insurance proceeds are exemptible under 11 U.S.C. §§ 522(d)(10)(E), 522(d)(11)(C) and 522(d)(11)(E) is SUBMITTED and the Court shall enter a separate order on this issue." [Doc. 130]. This is the referenced Order.

Whether the Proceeds are the type of asset that is subject to exemption under 11 U.S.C. §§ 522(d)(10)(E), 522(d)(11)(C) or 522(d)(11)(E) is a legal issue. If any of these provisions apply, evidence is required to determine if any or all of the potentially exempt Proceeds are reasonably necessary for Pamela's support. *Id.* As set forth more fully herein, Pamela is not entitled to exempt the Proceeds under either §§ 522(d)(10)(E) and 522(d)(11)(C). Further, even if § 522(d)(11)(E) applies, Pamela can only exempt a maximum of $10,012.14.

This ruling means that at least $89,987.86 of the Proceeds is non-exempt property of the estate. As the maximum amount necessary to pay all unsecured creditors in full is $34,283.18, *see infra* at Section I, there is no apparent need to take evidence on whether the $10,012.14 exemption is reasonably necessary for Pamela's support.

## I.   FACTS AND PROCEDURAL HISTORY.

The following facts are not in dispute. The Debtors filed for chapter 13 relief on July 15, 2009. The Court confirmed their chapter 13 plan on January 20, 2010 [Doc. 49]. At the time the Debtors filed bankruptcy and through confirmation of their plan, they were married.

The Debtors separated on September 1, 2012, and divorced on April 17, 2013. The Divorce Decree incorporates the Debtors' Separation and Settlement Agreement (the "Settlement Agreement"). The parties agree in their Joint Stipulations [Doc. 112] that the terms of the Settlement Agreement are as follows:

- The Debtors retain their own non-marital property;

2

- Pamela retains all rights in the marital home located at 3268 Keavy Road, London, Kentucky. She is solely responsible for the mortgage, property taxes and insurance until the mortgage on the home is paid in full. Pamela is further obligated to remove Eddy as an obligor on the mortgage debt within three (3) years;

- Pamela retains all her personal property along with the 2004 Cadillac;

- Eddy retains all his personal property along with the 2005 Ford Explorer and 2008 Honda motorcycle;

- The Debtors retain their own individual retirement accounts with each Debtor having full knowledge of the amounts in the others' accounts;

- Each Debtor is responsible for paying 50% of the monthly $1,300.00 chapter 13 plan payment;

- Each Debtor is responsible for 50% of the $4,544.76 post-petition tax obligation owed the IRS;

- Each Debtor is responsible for 50% of all auto insurance until such time as the vehicles are transferred to the respective parties per the Separation Agreement;

- Each Debtor is responsible for 50% of the current cell phone charges until the current contract is replaced or rescinded;

- Each Debtor is responsible for 50% of the $566.62 debt due Cook Tire; and

- All other debts not provided for in the chapter 13 petition are the sole responsibility of the party incurring said debt.

The Debtors also specifically waived all claims of dower, descent, distribution, and any and all claims for past, present or future maintenance or alimony in the Settlement Agreement.

Eddy died in a helicopter crash on June 6, 2013, approximately seven weeks after the divorce was finalized. Pamela received the Proceeds because she was still listed as beneficiary on Eddy's life insurance policy. The Settlement Agreement did not address the life insurance policy.

Pamela amended Schedule C to exempt the full value of the Proceeds pursuant to 11 U.S.C. § 522(d) and sought leave to pay off the chapter 13 plan in advance [Docs. 94, 95 and 100]. Pamela calculated that, at the time her Motion was filed, she owed $14,300.00 (11 payments of $1,300.00) to pay off the plan [Doc. 94].

The Trustee objects to the exemption of the Proceeds and Pamela's request to pay off the chapter 13 plan in advance. She argues the Proceeds are property of the estate pursuant to 11 U.S.C. § 1306(a)(1) and § 541(a)(5)(C) and they are not exempt in full pursuant to 11 U.S.C. § 522(d) because the entire amount is not reasonably necessary to Pamela's support. According to the Trustee, the current plan provides a 64% distribution to general unsecured creditors and the remaining sum due under the plan is $14,515.00. The Trustee argues the chapter 13 plan should be modified to require Pamela to pay the Debtors' unsecured creditors in full with a payment of $34,283.18 from the non-exempt portion of the Proceeds.

On September 4, 2013, after considering Pamela's Motion, Amended Schedule C and the Trustee's Objections, the Court set the matter for evidentiary hearing on November 20, 2013. Two days before the evidentiary hearing, Pamela filed a Motion to Continue the Evidentiary Hearing [Doc. 22] to allow her counsel time to address additional issues raised by the Trustee[3] and set the Motion for the same date and time as the evidentiary hearing.

On November 20, 2013, the parties appeared and the Trustee informed the Court that she did not oppose Pamela's request for a continuance of the evidentiary hearing. The parties further agreed that the issue of whether the Proceeds are exempt under §§ 522(d)(10)(E), 522(d)(11)(C)

---

[3] The Trustee filed a Motion to Modify Confirmed Plan [Doc. 106] and an Amended Motion to Modify the Confirmed Plan [Doc. 118] requesting the Debtor modify the plan to increase her monthly payment and pay her unsecured creditors in full with the Proceeds or funds from a 401(k) retirement plan. The Trustee also objected [Doc. 121] to another amendment to the Debtors' Schedule C [Doc. 111] to include the 401(k) retirement plan, but later withdrew her objection [Doc. 136].

4

and/or 522(d)(11)(E) is a legal issue and the amount in controversy is $34,283.18 of the Proceeds (the amount the Trustee claims is necessary to pay the remaining unsecured claims in full).  *See supra*.  Based on these representations, the Court continued the evidentiary hearing pending further orders and took the issue of whether §§ 522(d)(10)(E), 522(d)(11)(C) and/or 522(d)(11)(E) apply to the Proceeds under submission.  This issue is now ripe for determination.

## II. DISCUSSION.

### A. The Trustee has the Burden of Proof as the Objecting Party.

The Trustee, as the objecting party, bears the burden of proof that the exemption is not proper.  Property that is claimed as exempt is exempted unless a party in interest objects. 11 U.S.C. § 522(l).  An objecting party must establish by a preponderance of the evidence that the debtor is not entitled to claim the disputed exemption.  FED. R. BANKR. P. 4003(c); *Borders v. Stout*, Case No. 5:07CV-86-R, 2008 U.S. Dist. LEXIS 20809 (W.D. Ky. March 17, 2008). Exemptions are liberally construed in favor of the debtor.  *Borders*, 2008 U.S. Dist. LEXIS 20809 at *7 (*citing In re Barker*, 768 F.2d 191, 196 (7th Cir. 1985)).

### B. The Proceeds are Property of the Estate.

Section 1306(a)(1) provides that property of the estate includes, in addition to property specified in § 541, "all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted, . . . " Section 541(a)(5)(C) includes life insurance proceeds as property of the estate to the extent that they are acquired within 180 days after the date of the filing of the petition.  Numerous courts have held that § 1306 expands the 180-day time period in § 541(a)(5)(C) to classify an inheritance or other "windfall" received more than 180 days after commencement of the case. *See, e.g., In re Wetzel*, 381 B.R. 247, 253-54 (Bankr. E.D. Wis. 2008).  This includes courts in

the Sixth Circuit. *See United States v. Harchar*, 371 B.R. 254 (N.D. Ohio 2007); *Boddie v. PNC Bank, NA*, Case No. 2:12-cv-158, 2013 U.S. Dist. LEXIS 15575 (S.D. Ohio Feb. 5, 2013).

Thus, the Proceeds are property of the estate and available to the Debtors' creditors unless they are properly exempt.

    **C.**    **11 U.S.C. §§ 522(d)(10)(E) and 522(d)(11)(C) are Not Applicable to the Proceeds.**

        **(1)**    **The Proceeds are Not Exempt pursuant to 11 U.S.C. § 522(d)(10)(E).**

Pamela seeks to exempt the Proceeds pursuant to § 522(d)(10)(E). Section 522(d)(10)(E) allows a debtor to exempt property pursuant to § 522(b)(2) if the property is:

> a payment under a stock bonus, pension, profit sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—
>
> (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;
>
> (ii) such payment is on account of age or length of service; and
>
> (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

11 U.S.C. § 522(d)(10)(E).

Pamela takes the position that the Proceeds are a payment "under 'a contract on account of illness, disability, death, age, or length of service.'" But the Trustee correctly points out that a life insurance policy is not a plan or contract similar to a stock bonus, pension, profit sharing, or annuity. *See Opel v. Daly (In re Daly)*, 344 B.R. 304, 317 (Bankr. M.D. Pa. 2005) (finding that Congress identifies life insurance proceeds as something other than a payment of the type

6

designated in 11 USC § 522(d)(10)(E) and the exclusion of the phrase "life insurance" from § 522(d)(10)(E) is deliberate).

The primary characteristic shared by the plans or contracts listed in § 522(d)(10)(E) is that they provide income as a substitute for wages. 4 COLLIER ON BANKRUPTCY § 522.09[10][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Life insurance is generally not, on its face, a substitute for wages. It is merely a contractual agreement that upon the death of the insured, a beneficiary shall receive a sum of money if the insured paid the requisite premiums during his or her life. There is no relationship between the wages of the insured and the proceeds paid out on the policy unless the insured and insurer create one. Pamela does not make such an argument and there is nothing in the Settlement Agreement or the record to suggest this kind of relationship.

Section 522(d)(10)(E) does not apply to life insurance proceeds. Therefore, the Proceeds are not exempt under § 522(d)(10)(E).

### (2)     The Proceeds are Not Exempt pursuant to 11 U.S.C. § 522(d)(11)(C).

Pamela further seeks to exempt the Proceeds under § 522(b)(2) pursuant to § 522(d)(11)(C). Section 522(d)(11)(C) allows exemption for:

> (11) The debtor's right to receive, or property that is traceable to—
>
> . . .
>
> (C) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor

11 U.S.C. § 522(d)(11)(C). For purposes of § 522, the term "dependent" includes the spouse of a "debtor, notwithstanding the absence of actual financial dependence." 11 U.S.C. § 522(a)(1).

Pamela tries to portray herself as still married and even calls herself a "widow" in at least one of her papers. *See* Doc. 103. That characterization is not supported by the record. Section 522(d)(11)(C) qualifies "dependent" as a dependent "on the date of such individual's death." Eddy died seven weeks after his divorce from Pamela was finalized. Pamela was not a "dependent" under § 522 on the date of Eddy's death.

Thus, § 522(d)(11)(C) does not apply.

### D.      Construing the Facts in the Debtors' favor, the Proceeds are Exemptible pursuant to 11 U.S.C. § 522(d)(11)(E) nly up to $10,012.14.

The Debtor's final attempt to exempt the Proceeds is under 11 U.S.C. § 522(d)(11)(E) as "compensation for loss of future earnings." Section 522(d)(11)(E) allows exemption under subsection (b)(2) of:

> (11) The debtor's right to receive, or property that is traceable to—
>
> . . .
>
> (E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

11 U.S.C. § 522(d)(11)(E).

Analysis of this exemption must come in stages. The first question is whether the Proceeds were "a payment in compensation of loss of future earnings of the debtor." "Debtor" in this clause must mean Pamela, as she is the person attempting to exempt the Proceeds. There is nothing in the record that indicates the Proceeds were to pay Pamela for lost future earnings. As previously mentioned, life insurance proceeds are not generally a substitute for wages. *See supra* at Section II.C(1). Further, there is no link between the death of Eddy and payment of life insurance proceeds and the ability of Pamela to earn income in the future.

8

The next part of the statute to apply is the requirement that the payment is "in compensation of loss of future earnings of … an individual of whom the debtor is or was a dependent." The first question under this provision is whether Pamela can qualify as a "dependent" under this statute. Unlike § 522(d)(11)(C), § 522(d)(11)(E) does not require that the debtor is a "dependent" on the date of death. As previously recognized, § 522(a)(1) provides that a spouse of the debtor is a "dependent." The undisputed facts are that Pamela and Eddy were married until approximately seven weeks before Eddy's death, so Pamela can qualify as a "dependent" even as an ex-spouse.

What is left under this part of the statute, therefore, is a determination of whether the Proceeds are a payment to compensate Pamela for the loss of Eddy's future earnings. Neither Pamela nor the Trustee addressed this issue in their arguments and, as previously indicated, the Settlement Agreement is silent regarding the life insurance policy. Therefore, it is necessary to review the record, and particularly the Settlement Agreement, to determine if Pamela was entitled to any part of Eddy's future earnings.

The most favorable conclusion for Pamela on this record is that the Proceeds were intended to compensate Pamela in the event Eddy lost his earnings and could not pay his share of the expenses allocated by the Settlement Agreement. The record does not necessarily allow this conclusion, but even giving Pamela the benefit of the doubt does not help her in this case based on the amounts at issue.

The record reflects Pamela's only possible expectation of payment from Eddy's future earnings is $10,012.14, calculated as follows:

1. $7,150.00: Eddy's one half share of the remaining chapter 13 plan payments, which he was required to pay per the Settlement Agreement, calculated at $14,300.00 per the Motion for Leave to Pay Off Plan in Advance [Doc. 94]; and

    2. Four other discrete debts described in the Settlement Agreement as follows:

        a. $2272.40: Eddy's one half share of the $4,544.76 obligation to the IRS;

        b. $117.00: Eddy's one half share of a vehicle insurance payment calculated for a period of two months[4] until Eddy's death;

        c. $194.43: Eddy's one half share of the monthly cell phone bill until such time as the parties secure their own cell phone account calculated for a period of two months until Eddy's death; and

        d. $278.31: Eddy's one half share of the $556.62 obligation to Cook Tire.

*See generally* Joint Stipulations [Doc. 112] and Amended Schedule J [Doc. 37]. Pamela clearly had no other expectation to receive any part of Eddy's future income, as she specifically waived all claims of dower, descent, distribution, and any and all claims for past, present or future maintenance or alimony in the Settlement Agreement. *See* Joint Stipulations [Doc. 112].

    Therefore, assuming the best case for Pamela, she can exempt only the $10,012.14 of Proceeds that Eddy was required to pay by the Settlement Agreement under § 522(d)(11)(E). She had no other expectation of funds from his future earnings because they were divorced and the Settlement Agreement limited her right to any future earnings. This analysis leaves $89,987.86 in non-exempt Proceeds available to pay unsecured creditors. As the parties have already agreed only $34,283.18 is required to pay all unsecured creditors in full, any further analysis is not required.

    As this Court can only find $10,012.14 of the Proceeds exemptible under § 522(d)(11)(E) assuming all the facts in Pamela's favor, an evidentiary hearing to determine whether the future earnings are "reasonably necessary for the support of the debtor and any dependent of the

---

[4] As the subsequent discussion will show, even if the two month period used in this and other calculations were extended any practical amount, it would still not be enough to affect the final conclusion.

debtor" seems unnecessary. Regardless of the outcome, the minimum non-exempt assets available to pay unsecured claims are $89,987.86 of the Proceeds.

### III. **CONCLUSION.**

Based on the foregoing, it is ORDERED:

(1) The Trustee's Objection to Debtor's Amendment to Schedule C [Doc. 96] and Objection to Debtor's Motion to Pay Off Plan in Advance [Doc. 98] are SUSTAINED and the Debtor's Motion to Pay Off Plan in Advance [Doc. 94] is DENIED;

(2) The Proceeds are not exempt pursuant to 11 U.S.C. §§ 522(d)(10)(E) and 522(d)(11)(C);

(3) Only an amount up to $10,012.14 of the Proceeds is potentially exempt pursuant to 11 U.S.C. § 522(d)(11)(E); and

(4) The parties shall appear for a status conference at **10:00 a.m. on December 18, 2013, in the U.S. Bankruptcy Court, Second Floor Courtroom, Old US Courthouse, 300 South Main Street, London, Kentucky,** to determine any remaining issues that require further action by the Court or the parties, including the Trustee's pending Amended Motion to Modify Confirmed Plan [Doc. 118].

11

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge
Dated: Thursday, December 05, 2013
(grs)**